UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ARTHUR G. BOYD, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 3:13 CV 814 |
|  | ) |  |
| DAVID LANE, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**OPINION AND ORDER**

Arthur G. Boyd, a *pro se* prisoner, filed an amended complaint pursuant to 42 U.S.C. § 1983 alleging that he was injured as a result of being subjected to hazardous conditions at the Porter County Jail. He also alleges that he was denied medical treatment for those injuries. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (quotation marks, citations and footnote omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quotation marks and brackets omitted). Thus, "a plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). "In order to state a claim under § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

In December 2012, Boyd was housed in the C-3 Pod of the Porter County Jail. He observed that shower water flowed out into the dayroom where the floor was not slip resistant. He complained about this hazard. In response, it was explained that the inmates needed to use the provided mop and bucket to clean up the water. On April 22, 2013, Boyd slipped and fell while walking through the water. The first set of claims that Boyd raises involve the construction of the jail and the hazard posed by the standing water in the dayroom.

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Here, Boyd's slip and fall claim does not satisfy either prong of this test.

"[N]ot every deviation from ideally safe conditions constitutes a violation of the constitution. The eighth amendment does not constitutionalize the Indiana Fire Code. Nor does it require complete compliance with the numerous OSHA regulations." *French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1985) (quotation marks and citations omitted.)

> Conditions of confinement must be severe to support an Eighth Amendment claim; "the prison officials' act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer* [*v. Brennan*, 511 U.S. 825, 834 (1994)] (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). *See also, Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994) (the Eighth Amendment only protects prisoners from conditions that "exceed contemporary bounds of decency of a mature, civilized society."); *Jackson* [*v. Duckworth*,] 955 F.2d [21,] 22 [(7th Cir. 1992)].

*Morissette v. Peters*, 45 F.3d 1119, 1123 (7th Cir. 1995) (parallel citations omitted). "An objectively sufficiently serious risk is one that society considers so grave that to expose any unwilling individual to it would offend contemporary standards of decency." *Christopher v. Buss*, 384 F.3d 879, 882 (7th Cir. 2004) (commas, quotation marks, and citations omitted). However, as the Tenth Circuit has explained, "while the standing-water problem was a potentially hazardous condition, slippery floors constitute a daily

risk faced by members of the public at large. Federal courts from other circuits have therefore consistently held that slippery prison floors do not violate the Eighth Amendment." *Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (collecting cases).

Moreover, Boyd has not plausibly alleged that anyone was deliberately indifferent to the standing water problem. Deliberate indifference is "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

> Negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless.

*Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206,

4

1208 (7th Cir. 1995). Even incompetence does not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000).

Here, the inmates in C-3 Pod were provided with a mop and bucket so that they could clean up the floor. Boyd notes that though these cleaning supplies were routinely picked up from other Pods, they were left in C-3 so the standing water could be cleaned up. The inmates were told about the issue and instructed what to do to solve it. Though there may have been other solutions to the hazard posed by the standing water, selecting this option does not demonstrate deliberate indifference. Therefore the hazardous conditions (slip and fall) claims do not state a claim and will be dismissed.

Boyd also alleges that he was denied medical treatment for the injuries he sustained when he fell. He explains that on April 22, 2013, after he returned from the hospital where he was diagnosed with a concussion, a neck sprain, and a lower back injury, he was placed in the Medical Isolation Unit for observation. The next day, Director of Nursing Michelle Harris discharged him without any restrictions and without first examining him. Boyd argues that he should not have been discharged. "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (quotation marks and citations omitted). Thus, a "disagreement with medical professionals [does not] state a cognizable Eighth

5

Amendment Claim under the deliberate indifference standard of *Estelle v. Gamble* [429 U.S. 97 (1976)]." *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Nevertheless, giving Boyd the benefit of the inferences to which he is entitled at the pleading stage of this proceeding he has plausibly alleged that Director of Nursing Michelle Harris was deliberately indifferent to his serious medical needs when she discharged him from the Medical Isolation Unit on April 23, 2013.

When Boyd returned to general population, Sgt. Young gave him a bed assignment on the floor. Boyd argues that because of his back injury, Sgt. Young should not have done this. However, "[i]f a prisoner is under the care of medical experts a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (ellipsis omitted) *quoting Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004). Here, Boyd was discharged without a medical restriction prohibiting him from being given a floor assignment, therefore it was not deliberately indifferent for Sgt. Young to have placed him there.

Later the same day (April 23, 2013), Boyd spoke to a nurse who transferred him back into the Medical Isolation Unit. On April 29, 2013, he was again released from the Medical Unit by Director of Nursing Harris. This time she issued him a walker, but as before, he had no medical restrictions and was again given a bed assignment on the floor by Sgt. Young. Again, because Boyd was discharged without a medical restriction prohibiting him from being given a floor assignment, he does not state a claim against Sgt. Young. However, giving him the benefit of the inferences to which he is entitled at

the pleading stage of this proceeding he has plausibly alleged that Director of Nursing Harris was deliberately indifferent to his serious medical needs by discharging him without a medical restriction as to his bed assignment on April 29, 2013.

On May 3, 2013, Director of Nursing Harris had Officer Steggie take the walker from Boyd. Two days later, at lunch, Officer J. Taylor required Boyd to stand with the other inmates to get his meal. When Boyd stood up, he fell. Though Boyd faults Officer Steggie for taking his walker, it was not deliberately indifferent for Officer Steggie to have complied with the instructions of Director of Nursing Harris. So too, though Boyd wants to sue Officer J. Taylor for requiring him to stand with the other inmates at lunch, without a medical restriction limiting his standing, Officer J. Taylor was not deliberately indifferent to have required Boyd to comply with the general requirements imposed on all inmates. However, giving Boyd the benefit of the inferences to which he is entitled at the pleading stage of this proceeding he has plausibly alleged that Director of Nursing Harris was deliberately indifferent to his serious medical needs by taking his walker on May 3, 2013.

After he fell, Boyd lay on the floor for ten minutes before medical assistance was called because neither Officer J. Taylor nor Officer Sergent believed that he was unable to get up on his own. Though he says that they verbally taunted him while he lay on the floor, "simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of

the laws." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). So too, a ten minute delay does not demonstrate that either officer was deliberately indifferent.

When Nurse Fraticelli arrived, she too did not believe that Boyd was unable to get up on his own. Boyd asked her to take his blood pressure, but she refused. Boyd wants to sue her for this, but there is no indication that he needed to have his blood pressure checked and inmates are "not entitled to demand specific care [nor] entitled to the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir.1997). Therefore he has not stated a claim against Nurse Fraticelli.

Two officers then helped Boyd to get up and go to his cell where he wrote a grievance about his medical problems. The next day, Sgt. Young responded by telling him to fill out a medical request form. This response shows that Sgt. Young was not deliberately indifferent because he instructed Boyd on the correct procedure to follow. After Boyd filed a medical request form, he was placed on the list to see the doctor on May 9, 2013. However, when he arrived, Director of Nursing Harris told him that he would not be seen because Warden John Widup had said "No." It is unclear why Boyd was removed from the Doctor list on May 9, 2013. It is unclear when (if ever) he was able to see a doctor. There may have been a good reason to delay or defer his appointment. The delay may have been brief and not caused any harm. If so, then Director of Nursing Harris and Warden Widup will not be liable. However, giving Boyd the benefit of the inferences to which he is entitled at the pleading stage of this proceeding he has plausibly alleged that Director of Nursing Harris and Warden Widup

were deliberately indifferent to his serious medical needs by cancelling his doctor's appointment on May 9, 2013.

For the foregoing reasons, the court:

(1) **GRANTS** Arthur G. Boyd leave to proceed against Director of Nursing Michelle Harris for compensatory and punitive damages for denying him medical treatment by discharging him from the Medical Isolation Unit on April 23, 2013; by discharging him without a medical restriction as to his bed assignment on April 29, 2013; by taking his walker on May 3, 2013; and by cancelling his doctor's appointment on May 9, 2013;

(2) **GRANTS** Arthur G. Boyd leave to proceed against Warden John Widup for compensatory and punitive damages for denying him medical treatment by cancelling his doctor's appointment on May 9, 2013;

(3) **DISMISSES** all other claims;

(4) **DISMISSES** Sheriff David Lane, Garriup Construction, Skillman Construction, Commissioner John Evans, Assistant Warden Gaydos, Captain Taylor, John Doe, Officer J. Taylor, Nurse Allysa Fraticelli, Sergeant Young, Officer Steggie, and Officer Sergent;

(5) **DIRECTS** the clerk to transmit the summons and USM-285 for Director of Nursing Michelle Harris and Warden John Widup to the United States Marshals Service along with a copy of the complaint and this order;

(6) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Director of Nursing Michelle Harris and Warden John Widup; and

(7) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Director of Nursing Michelle Harris and Warden John Widup respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED.**

Date: February 12, 2014

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT